1
2
3
4
5
6           **UNITED STATES DISTRICT COURT**
7           **CENTRAL DISTRICT OF CALIFORNIA**
8                **SOUTHERN DIVISION**
9
10
11                                              **Case No.  8:25-cv-02479-DOC-ADS**

JUNG WOOK NA,
12      Petitioner,
13
            v.
14
JASMINE PEARL NA,                               **ORDER DENYING PETITIONER'S**
15          Respondent.                          **MOTION TO REMAND [9]**
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Before the Court is Petitioner Jung Wook Na's ("Petitioner") Motion to Remand Case to Orange County Superior Court ("Mot.") (Dkt. 9). The Court heard oral arguments on December 8, 2025. For reasons set forth below, the Court **DENIES** Petitioner's Motion to Remand and sets an Evidentiary Hearing on January 12, 2025 and a case management conference on December 8, 2025.

## I.    BACKGROUND

### A.  Facts

The following facts are from Petition Under the Hague Convention. ("Petition") (Dkt. 1); Ex. 3 (Dkt. 9). Jasmine Pearl Na ("Respondent") and Petitioner met in Irvine, California in 1997 and became close friends, even after Petitioner moved back to South Korea. Petition at 5:5–7. The two reunited in 2013, and got married in Seoul, South Korea on August 13, 2014. *Id*. at 5:8–10. Their first child was also born in 2014 in Seoul, South Korea, with Petitioner claiming he quickly became the primary caretaker. *Id.* at 5:11–14; see generally Ex. 16 (Dkt. 1-4). Their second child was born in Seoul, South Korea in 2019. *Id.* at 5:15. Both children are dual citizens of South Korea and the United States. *Id.* at 5:16.

The family lived together in South Korea until approximately 2020, when Respondent moved out of the martial home in March of that year. *Id*. at 5:17–19. While the two are still legally married, Petitioner claims the two had been separated for four to five years. *Id.* In May 2021, Respondent moved back to her home in Irvine, California, while the children remained in South Korea with Petitioner. *Id.* at 6:1–2. In July 2021, Respondent returned to South Korea, taking both children with her back to California on August 7, 2021. *Id.* at 6:2–4. In December 2021, Respondent sent the younger child back to Petitioner in South Korea on December 19, 2021. *Id.* at 6:7–8. Respondent returned the older child to South Korea in June 2022, and the children had not returned to the United States since June 2022. *Id*. at 6:12–13.

Since 2021, Respondent visited the children five times in South Korea: August 2022; June 2023; July 2023; March 2025; and July 2025. *Id.* at 6:19–21. When visiting the children,

-2-

Respondent would stay in her old office that Petitioner kept for her, or a hotel, while the kids slept in the home they shared with Petitioner—their primary caregiver since 2021. *Id.* at 6:21–23.

On July 18, 2025, Respondent arrived in South Korea to spend time with her children before the school year began. Id. at 7:3–4. On or around July 28, 2025, Respondent requested the children's passports from Petitioner, stating she wanted to take them to Japan for one week. *Id*. at 7:4–6. At this time, Petitioner was away on a church retreat while Respondent spent time with the children, but agreed to give passports to Respondent and let the children go to Japan. *Id.* at 7:6–7. Respondent requested to take the dog that Petitioner and the children were taking care of at the time to Japan as well. *Id.* at 7:8–9. On July 29, 2025, the older child texted Petitioner about the passports, with Petitioner stating where he left them. *Id*. at 7:17–19. Subsequently, Petitioner sent the older child information about school orientation that began on August 7, 2025, instructing the older child to invite Respondent. *Id.* at 7:21–22. On August 1, 2025, Petitioner saw on his iPhone that his older child was in California. *Id*. at 7:23–24. When Petitioner texted the older child asking if older child was in California, older child said they were in Japan, and that older child would not be able to talk for about five days. *Id*. at 7:24–25. Petitioner eventually learned the children and Respondent left South Korea on July 31, 2025. *Id.* at 8:6–7.

Petitioner believes Respondent will allege that Petitioner abused the children, which he denies. *Id*. at 8:8–9. Before the children were brought to the United States, Respondent sent Petitioner a video accusing him of "cheating and physically abusing [older child]," which he also denies. *Id*. at 8:10–11; see generally Notice of Motion to Remand ("Not. Remand") Ex. 1 (Dkt. 9). Respondent also told Petitioner that she had an attorney in California and to agree to the children remaining in Irvine, California. *Id*. at 8:12–13.

On August 7, 2025, Petitioner signed the Hague Application for return of his children to their habitual residence of South Korea, where they were enrolled in school, had medical records and updated vaccinations, and were involved in multiple activities. *Id.* at 8:15–16, 6:24–26, 7:1–2. On August 11, 2025, Petitioner emailed Respondent asking her to return the

children, with Respondent responding that he must pursue the matter legally. *Id.* 8:17–18. Respondent has stated that she supports contact between Petitioner and the children, but she has allegedly only allowed Petitioner to speak with the children twice since they left South Korea. *Id.* at 8:19–21. The children are currently enrolled in elementary school in Irvine, with an Irvine home address. *Id.* at 8:24, 9:1. Respondent is listed as Mother, and Petitioner is not listed on either child's school records. *Id.* at 9:1–4. On September 3, 2025, Petitioner filed for custody and divorce in South Korea. *Id.* at 9:5.

## B. Procedural History

On October 13, 2025, Petitioner, through the District Attorney of the County of Orange, filed an action against Respondent in the Superior Court of the State of California in and for the County of Orange. This action is titled Petition Under the Hague Convention for (1) Protective Custody Warrant for K.E.N, and (2) Return of S.A.N. to South Korea;. (Dkt. 1, Ex. 1). Portioner filed his Motion to Remand on November 19, 2025. (Dkt. 9). Respondent filed her Opposition to Removal ("Opp") (Dkt. 11) on November 25, 2025.

## II.    LEGAL STANDARD

### A. The Hague Convention

"The Hague Convention on the Civil aspects of International Child Abduction . . . addresses the problem of international child abductions during domestic disputes." *Radu v. Shon,* 62 F.4th 1136, 1168 (9th Cir. 2023). Under the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention), Oct. 25, 1980, T.I.A.S. No. 00670, S. Treaty Doc. No. 99-11 (Treaty Doc.), "a child wrongfully removed from [his or her] country of "habitual residence" ordinarily must be returned to that country." *Monasky v. Taglieri*, 589 U.S. 68, 70 (2020). The Hague Conference on Private International Law adopted the Hague Convention in 1980 "[t]o address the problem of international child abductions during domestic disputes." *Lozano v.* Montoya Alvarez, 572 U.S. 1, 4 (2014). One hundred one countries are Convention signatories. *Monasky,* 589 U.S. at 71 (citing Hague Conference on Private Int'l Law, Convention of 25 Oct. 1980 on the Civil Aspects of Int'l Child Abduction, Status Table,

https://www.hcch.net/en/instruments/conventions/status-table/?cid=24.). The International Child

Abduction Remedies Act (ICARA), 102 Stat. 437, as amended, 22 U.S.C. §9001 *et seq.,*

implements our Nation's obligations under the Convention.  *Id.*  It is the Convention's core

promise that the "interests of children . . .  in matter relating to their custody" are best served

when custody decisions are made in the child's country of "habitual residence." *Id.* (quotations

omitted)(citing Convention Preamble, Treaty Doc., at 7;  *see Abbot v. Abbott,* 560 U.S. 1, 20,

(2010)).  The removal or retention of a child is wrongful and warrants prompt return of the child

to its habitual residence if the retention is done in violation of the custody laws of the child's

habitual residence. *Id at* 72 (citing Art. 12, Treaty Doc., at 9 (cross-referencing Art. 3, ibid*., at*

7)).

　　　　"Domestically, [ICARA] implements the Convention's rules . . . and gives . . . court[s]

jurisdiction to adjudicate disputes under the Convention." *Id.* Specifically, "ICARA vests state

and federal courts with concurrent jurisdiction over claims under the convention." *Holder v.*

*Holder,* 305 F.3d 854, 860 (9th Cir. 2002); *see* 22 U.S.C § 9003(a)("The courts of the States and

the United States district courts shall have concurrent original jurisdiction of actions arising

under the Convention.").

## III.    DISCUSSION

　　　　Petitioner seeks remand of the action, arguing that the matter is properly before the state

court, and thus this Court should abstain from interfering with pending family law proceedings

before the state court. A Hauge Convention proceeding does not require this Court to adjudicate

issues of child custody or family law generally, rather a Hague Convention proceeding only

concerns whether a child needs to be returned to their habitual residence. Further, the general

rule is that the pendency of a state court proceeding is not a reason for a federal court to decline

to exercise jurisdiction established by congress. *McClellan v. Carland,* 217 U.S. 268, 281-82

(1910). However, an exception to that rule is *Younger* abstention. *Younger,* 401 U.S. The

*Younger* abstention doctrine requires federal courts to abstain from intervening in pending state

judicial proceedings when (1) there is ongoing state judicial proceedings; (2) the proceedings

implicate important state interest; and (3) the state proceedings provide the plaintiff with an adequate opportunity to raise federal claims. 401 U.S. 37 at 39-53.

The Court finds it cannot appropriately apply *Younger* abstention in this case because the Hague Convention Petition was not litigated in state court. "Although the federal courts applying abstention doctrines to Hague Convention Petitions have reached different results as to whether to exercise abstention, there is a pattern in their analyses." *Murray v. Murray* (C.D.Cal. July 20, 2020, No. CV 20-4242 FMO (MRWx)) 2020 U.S. Dist. LEXIS 255219, at *12); *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005). "In a situation where there is a state court custody proceeding and a petition is filed in federal court under the Hague Convention, but the Hague Convention has not been raised, or raised but not litigated, in the state court, the federal court has generally found that abstention is not appropriate." *Id*. On the other hand, "[w]here the Hague Convention Petition has been raised and litigated in the state court, abstention by the federal court has generally been found to be appropriate." *Id*. In the present matter, Respondent took no substantial action in state court regarding the Hauge Petition and appeared on October 29, 2025 to advise the state court that she would be removing the matter to federal court (Dkt. 11, at 4).

This case differs from other Hague Petition cases where *Younger* abstention was applied. For example, in *Witherspoon v. Orange County Dept. of Social Services,* 646 F. Supp.2d 1176, 1180 (C.D. Cal. 2009), the court found that there were sufficient ongoing state court proceedings because the petition had been filed in state court, granted, and overturned by the Court of Appeal. Another example is *Cerit v. Cerit,* 188 F. Supp.2d 1239, 1246 (D. Haw. 2002), where the court found there was ongoing state court proceedings because the petition was filed in state court and the petitioner had already made an ICARA petition argument. In that case, the petitioner then filed an ICARA petition in federal court after the state court arguments, but the district court held that because the state court was still in the process of determining the central issues related to the petitioner's Hague Convention arguments, *Younger* abstention was appropriate. *Id.* at 1247. The distinction is that in *Cerit,* the district court had found that "the issues central to such a petition were lengthy addressed by the court," whereas

here the evidence does not show there were orders or hearings as to the Hague Petition. *See id.* The evidence concerning the state court hearings in *Cerit,* shows that the Judge was discussing the habitual residence of the child and the contents of the Hague Convention Petition. *Id.* In contrast, in this case there have not been evidentiary hearings or substantive discussions regarding the Hague Petition in state court. Thus, the first element of Younger is not met and abstention is not appropriate.

### IV. Disposition

For the reasons set forth above, the Court **DENIES** Petitioner's Motion to Remand and **SETS AN EVIDENTIARY HEARING** on this matter for January 12, 2026 at 1:30 PM. The court also **SETS A CASE MANAGEMENT CONFERENCE** considering the evidentiary hearing on **December 8, 2025 at 8:30 AM**. At this hearing, the court will decide time constraints for the evidentiary hearing. The parties are ordered to submit to the Court by **January 5 , 2026** statements detailing the proof underlying a prima facie case for return, the proof underlying any defenses, the affidavits and other documents supporting the parties' respective claims, the expected range of evidence, and whether there are actual, material, and relevant factual disputes. All prior orders concerning custody and visitation made by the Superior Court remain in effect.

DATED: December 5, 2025

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE